IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DOLCAE M. VÁZQUEZ MATOS<br><br>    Plaintiff<br><br>    Vs.<br><br>AMERICA CRUISE FERRIES, INC.;<br>COMPANY A through F;<br>INSURANCE COMPANIES G, H and I;<br><br>    Defendants | CIVIL NO. :<br><br><br><br>PERSONAL INJURY |

# COMPLAINT

**TO THE HONORABLE COURT:**

**NOW COMES** plaintiff, Dolcae M. Vázquez Matos, through the undersigned attorney, and very respectfully, states, alleges and prays:

## I.   JURISDICTIONAL PLEADINGS

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1333 as it involves the Admiralty and Maritime Jurisdiction of this Honorable Court and is a claim within the meaning of Fed.R.Civ.P. 9(h).

2. Supplemental jurisdiction for state based claims is based upon 28 U.S.C. 1333 and 28 U.S.C. 1367(a).

3. Venue is proper inasmuch as the location of the incident was within the navigable waters of the United States and in connection with a traditional maritime

activity, i.e., the ferrying of passengers and cargo from the Dominican Republic to Puerto Rico, aboard the M/V Caribbean Fantasy.

## II.    PARTIES

4.     Plaintiff Dolcae M. Vázquez Matos, is a citizen of the Commonwealth of Puerto Rico, who on August 16, 2016 was traveling to Puerto Rico from the Dominican Republic aboard the M/V Caribbean Fantasy.

5.     Defendant America Cruise Ferries, Inc. is a corporation organized, authorized to do business and with its principal place of business, under the laws of, and in, the Commonwealth of Puerto Rico, who by the time of the facts alleged on this complaint operated the M/V Caribbean Fantasy between Puerto Rico and the Dominican Republic.

6.     Co-defendant Company A through F are persons, whose names are unknown at the present time, that own, manage, maintain or operate the M/V Caribbean Fantasy between Puerto Rico and the Dominican Republic, or who otherwise are responsible for the damages suffered by plaintiff.

7.     Co-defendant Insurance Companies G, H and I are an insurance companies whose names are unknown at the present time that at the time that the facts alleged herein took place, had issued a public liability policy or policies that was(were) in full force and effect to protect and indemnify plaintiff, among others, for damages caused by its insured America Cruise Ferries, Inc. and/or Company A through F.

8.     These parties are referred herein as defendants.

## III.   FACTS

9. Plaintiff purchased a round-trip ticket for a voyage from San Juan, Puerto Rico to the Dominican Republic and back to San Juan, aboard the M/V Caribbean Fantasy. She boarded the vessel in the port of Santo Domingo, Dominican Republic, on August 16, 2016, at approximately 7:00 p.m., for the return trip to San Juan.

10. During the crossing from the Dominican Republic to Puerto Rico, at about 6:40 a.m., as the vessel approached the area of Vega Baja on the north coast of Puerto Rico, plaintiff was walking towards the deck that leads from the passenger seating area, and began to notice smoke and a burning smell.

11. Upon seeing the smoke, plaintiff turned back to the seating area and noticed that the doors that divide different areas of the vessel were closed. She asked a crewmember what was happening and was told that the doors always closed at that time. She immediately knew something was wrong because she had made the same voyage multiple times and she knew she was being lied to.

12. Plaintiff then went down to the lobby and received further confirmation that something was wrong when she saw the movements of the crew and their body language. One of the higher ranking crewmembers told her that it was a minor situation that was being dealt with and that everything was under control. She responded that she had just come from above and that she had smelled a burning smell and was again told that the situation was being dealt with and was under control.

13. Thereabouts she noticed that the vessel was far from the coast of Puerto Rico, more so than in other trips she had made before. The vessel's air conditioning system was not working. Smoke started to come out the air conditioning ducts. Plaintiff started to feel desperate and to fear for her safety.

14. A crewmember told her to go back up to the passenger seating area. She told the crewmember that smoke was coming into and out of that area. She started to cry. A crewmember took her with him to the vessel's upper deck, where she was one of the first passengers to arrive.

15. A crewmember helped plaintiff put on a personal flotation device. After that, plaintiff, and all other passengers in that area, remained standing in the upper deck for considerable time, approximately 30 minutes, without being told what to do.

16. After a long time, the crew started to prepare the lifeboats. However, they did not load any of the passengers on any of the lifeboats until the Coast Guard arrived at the scene.

17. Passengers were asking the crew why they were not being allowed aboard the lifeboats and were told that nothing was happening and that they should remain calm. They were not told that a fire was raging inside the vessel nor were they explained the evacuation process.

18. As the passengers realized that the M/V Caribbean Fantasy was on fire and their lives were at risk, panic broke out among many of the passengers, some of whom became hysterical. The scene was chaotic, with passengers shouting, crying, and pushing each other. The smoke from the fire onboard filled the air and burned

4

the plaintiff's eyes and throat. The motion of the vessel in the ocean swell made things worse, and the plaintiff felt nausea and began to sweat profusely.

19. Plaintiff felt extremely anxious and fearful, as the vessel was far from shore and the smoke was becoming thicker. Her thoughts raced, and she considered the possibility that it might be the last day of her life. Using a cellular phone loaned to her by another passenger, she called a friend in Puerto Rico and asked him to help her and to do everything that could be done so that she would not die that day.

20. Eventually the crew started to load the passengers into the lifeboats. Once inside the lifeboat, the crew attempted to launch it. The automatic pulley system did not function, however, so the crew had to manipulate the pulleys by hand in order to launch the lifeboat.

21. As it was being lowered, the lifeboat became stuck midways down, where it remained approximately 15 minutes. Because of the ocean swell, the lifeboat smashed into the side of the vessel continuously with an impact so violent that the lifeboat's hull started to crack. The passengers inside the lifeboat started to swing into each other as the lifeboat smashed into the vessel, causing fear and physical trauma.

22. When the crew finally managed to lower the lifeboat, it smashed forcefully into the ocean. However, the lifeboat could not be released from one of the cables causing it to continue to smash into the vessel's hull for another 15 or 20 minutes, making bigger and wider the crack on the lifeboat's hull.

23. On or about this time, 3 of the lifeboat passengers, fearing that they would die if they remained on the boat, jumped into the ocean and took their chances, braving the waves and elements.

24. Plaintiff wondered if, in order to save her life, she should jump into the open ocean. However, plaintiff is not a strong swimmer, and swimming to the shore or to another boat was not a feasible alternative, more so considering the big waves and strong currents that day. Notwithstanding that, and due to the fact that the crew seemed not to have control of the situation, plaintiff took the difficult decision to jump into the ocean. However, as she was about to jump into the ocean, she was held back by a crewmember and other passengers. A Coast Guard member in a nearby vessel shouted at her not to jump and that sharks were in the area.

25. Once the lifeboat reached the ocean, water started to enter the lifeboat, presumably because the lifeboat suffered hull damage as it slammed into the sides of the M/V Caribbean Fantasy.

26. The crewmembers aboard the lifeboat lost control of the situation and seemed to become hysteric and anxious, at times shouting to each other.

27. As if this was not enough, once the remaining cable was released, the engines of the lifeboat were not operational, and the lifeboat started to drift on the open seas. Plaintiff drifted on the lifeboat for what seemed like an eternity. The lifeboat separated from the coast of Puerto Rico and the M/V Caribbean Fantasy as it drifted away.

28. As such, plaintiff was effectively trapped in the sinking, drifting lifeboat and at the mercy of the elements, with no recourse but to wait being rescued or, quite possibly at the time, for death to arrive. At this point the water level inside the lifeboat was higher than her ankles.

29. After what felt like an eternity, a Coast Guard vessel finally reached the drifting lifeboat. Because of the size of the waves, the Coast Guard vessel slammed into the lifeboat several times. This Coast Guard vessel was not able to rescue the passengers.

30. Eventually, an inflatable Coast Guard vessel arrived and was able to assist the bigger Coast Guard vessel. The passengers were rescued, including plaintiff, with some going aboard the bigger vessel and some aboard the inflatable.

31. Plaintiff was taken to the Panamerican Pier in the Harbor of San Juan, where first aid treatment was provided to the passengers, including plaintiff. Plaintiff, who had her shirt torn off her back from the previous ordeal, was put into a stretcher and wheeled to a treatment area. She was looked at by a doctor, who mistakenly thought plaintiff did not require further medical assistance.

32. After that, a paramedic noticed that plaintiff's pupils were dilated and recognized that she needed medical assistance. Her blood pressure was very low. An injection to raise her blood pressured was administered, as was an IV to replenish her fluids because, due to her constant vomiting, plaintiff was severely dehydrated.

33. Plaintiff was then loaded into an ambulance and taken to the Ashford Presbyterian Hospital in Condado, where she was stabilized and later released. She

had to go back to the Presbyterian Hospital the next day due to tachycardia, anxiety, abdominal pain due to the physical trauma suffered, and pain in her diaphragm due to the constant vomiting, among other reasons.

34. Throughout this ordeal, plaintiff more than once, indeed constantly, thought she was going to die. Her life flashed before her numerous times. She wondered what would happen to her children and her family; and who would take care of the education and well-being of her children.

35. While the aforementioned ordeal was underway, plaintiff suffered from dizziness, nausea, extreme panic, anxiety, a sense of despair and helplessness, and dehydration.

36. Plaintiff is suffering from post-traumatic stress disorder like symptoms and is under psychiatric treatment. She also suffers from extreme panic, sadness, a sense of despair and helplessness, a lack of interest in daily activities, insomnia and other sleep disturbances such as nightmares, depression, her tranquility has been seriously affected, suffered economic losses, all of which affect her daily activities, including her family life. She still has a nauseous feeling whenever she eats. She has not dared to travel back to the Dominican Republic, where she conducts business, due to fear to travel again after the events herein alleged.

### IV.    CAUSES OF ACTION

37. The allegations of the preceding paragraphs are realleged as if fully set forth in their entirety.

38. The defendant America Cruise Ferries, Inc., operators of the M/V Caribbean Fantasy, was negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly maintain the vessel in a safe and seaworthy condition, resulting in the onboard engine-room fire that caused the plaintiff's damages alleged herein.

39. The M/V Caribbean Fantasy had suffered various failures in its propulsion, mechanical and electrical systems during the voyages immediately prior to the incidents alleged herein, thereby placing the defendant, America Cruise Ferries, Inc., operators of the vessel, on notice of the need to conduct proper maintenance and refurbishment of its propulsion, mechanical and electrical systems, which defendant failed to do.

40. The defendant America Cruise Ferries, Inc., operators of the M/V Caribbean Fantasy, was also negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly maintain the vessel's lifeboats, escape slides and other safety equipment in proper working order, resulting in unnecessary delays in the evacuation of the vessel and causing and contributing to the damages alleged herein.

41. The defendant America Cruise Ferries, Inc., operators of the M/V Caribbean Fantasy, was also negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly train the vessel's crew in emergency procedures, resulting in unnecessary delays in the evacuation of the vessel and causing and contributing to the damages alleged herein.

42. Under the general maritime law of the United States, the owners and operators of the M/V Caribbean Fantasy owed the highest degree of care to their passengers, to ensure that the motor vessel on which they were traveling was in all respects seaworthy, staunch, fit and suitable for its intended purpose, and to ensure that the passengers did not come to any harm during the voyage. The defendants owners and operators of the M/V Caribbean Fantasy breached such duty of care through the actions and omissions set forth in this complaint.

43. Under Articles 1802 and 1803 of the Civil Code of Puerto Rico, the defendants are jointly and severally liable for all damages caused to the plaintiff by the negligence of the operators and crew of the M/V Caribbean Fantasy, as fully alleged herein.

## V. DAMAGES

44. The plaintiff suffered physical damages as a result of the negligence of the defendants, including those damages hereinbefore alleged.

45. The plaintiff suffered emotional and mental damages as a result of the negligence of the defendants, including extreme panic, extreme emotional distress, extreme fear, horror, mental shock, mental anguish, psychological trauma, sadness, depression and anxiety during the ordeal and post-traumatic stress disorder like symptoms.

46. The plaintiff also lost her cell phone, luggage and personal items as a result of the negligence of the defendants, all of which are valued at approximately $10,000.00.

47. The physical damages, mental pain and anguish, and other damages suffered by plaintiff are a direct consequence of the negligence of the defendants are reasonably calculated at this time to be in excess of $500,000.00.

48. Plaintiff's medical expenses are reasonably calculated at this time to be not less than $3,000.00.

49. All of the above named defendants are severally and jointly liable to plaintiff for all damages, expenses and loss of income alleged in this complaint.

50. Plaintiff demands trial by jury regarding all issues of material fact in the instant case.

**WHEREFORE**, it is very respectfully requested from this Honorable Court to enter judgment in favor of the plaintiff and against the defendants severally and jointly in the amount above requested plus interest, costs and attorneys' fees.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico, this 19th day of October, 2016.

**VELÁZQUEZ & VELÁZQUEZ LAW OFFICES, P.S.C.**
P.O. Box 734
Caguas, PR  00726-0734
Tel.  787-744-7272
Fax  787-744-7277
Email:  rvv@vvlo.com

s/ Rafael J. Velázquez Villares
RAFAEL J. VELÁZQUEZ VILLARES
USDC 214302

360